**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**DONALD S. CONERLY**                                                                      **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 1:06cv467-LG-JMR**

**JO ANNE BARNHART**
**COMMISSIONER OF SOCIAL SECURITY**                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

This cause comes before this Court on Plaintiff's Motion [6-1] to Remand/Reverse which is accompanied by a Memorandum [7-1] in Support. Defendant filed a Response [8-1] in Opposition seeking affirmation of the Commissioner's final decision. Defendant also filed a Memorandum [9-1] in Support. Having considered the Plaintiff's Motion [6-1],the Memorandum in Support [7-1], the Defendant's Response [8-1] and Memorandum [9-1], the record of proceedings below, along with the record as a whole and the relevant law, this Court finds that Plaintiff's Motion [6-1] Reverse/Remand should be denied and the final decision of the Commissioner should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on June 3, 2003, and protectively filed an application for Supplemental Security Income on April 29, 2003. (Tr. 16, 76-78). Plaintiff's applications were denied at the initial and reconsideration levels. (Tr. 33-34, 52-58, 60-62). Thereafter, Plaintiff requested an administrative hearing. (Tr. 63-64). This hearing was held on December 2, 2004, before an Administrative Law Judge (ALJ) in which Plaintiff, represented by counsel, and a Vocational Expert (VE) appeared and testified. (Tr. 415-447). On March 17, 2005, the ALJ rendered a decision finding that Plaintiff was not disabled. (Tr. 13-23). Plaintiff appealed the unfavorable decision to the Appeals Council (AC). (Tr. 12). On March 6,

2006, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 7-9).  On May 9, 2006, Plaintiff filed the instant Complaint [1-1] pursuant to 42 U.S.C. § 405(g).

## FACTS

Plaintiff, who was 33 years old on the date the ALJ issued the decision denying benefits, has a high school education with past work experience as a welder and an insurance agent. (Tr. 76, 131, 136, 419-420).  Plaintiff was last insured for Disability Insurance Benefits on June 30, 2007. (Tr. 76). Plaintiff would be classified as a "younger individual" both at the time his alleged disability began and when the ALJ rendered her decision. (Tr. 23).  Plaintiff alleged disability as of April 8, 2003, due to depression, GERD, diabetes mellitus, diabetic neuropathy, morbid obesity, sleep apnea, hypertrigyceridemia, hernia, hypertension, and dyspnea on exertion. (Tr. 130).  Prior to Plaintiff's alleged onset date, he was treated for numerous ailments including chest pain, heat stroke, lightheadedness, vertigo, asthmatic bronchitis with chronic obstructive pulmonary disease, hypertension, early congestive heart failure, dystymia and insomnia. (Tr. 17, 191-209, 282-296, 298-302, 325-253).

Plaintiff saw Dr. Haidar during a period from April 8, 2003, through May 19, 2003. (Tr. 371-374).  Plaintiff complained of diabetes mellitus with neuropathy, sleep apnea, hypertension, low back pain, and dyspnea. (Tr. 371, 374).  Plaintiff claimed that he could not sit or stand for a long period of time and had difficulty walking. (Tr. 374).  Dr. Haidar noted that Plaintiff weighed about 350 pounds with a blood pressure reading of 110/80, and his extremities were without clubbing, cyanosis, or edema. (Tr. 374).  Dr. Haidar found that Plaintiff had occasional headaches, occasional blurred vision, extreme sweating, knee pain and reflux symptoms. *Id*. Plaintiff's pulses were palpable, but there was absent vibratory sensation and decreased temperature. *Id*. Plaintiff was prescribed

medication, scheduled for a sleep study, and the benefits of both diet and exercise were discussed. *Id*.

On Plaintiff's subsequent visits in April and May 2003, Dr. Haidar noted that Plaintiff should receive a C-PAP machine, in order to treat his sleep apnea, and that Plaintiff's weight was roughly the same. (Tr.371). Dr. Haidar stated that Plaintiff's blood sugar was not well controlled, but noted that Plaintiff was not taking his medication or checking his blood sugar as suggested. *Id*. In July 2003, a pulmonary function study was conducted, which indicated that Plaintiff's lungs were clear. (Tr. 376). Plaintiff saw Dr. Haider again in August where the doctor found Plaintiff's weight to be three-hundred and forty-two (342) pounds, edema in his lower extremities, difficulty walking on his tip toes and heels, inability to stand up from a squatting position, and marked absence of sensation in both feet. (Tr. 403-405).

On July 22, 2003, a consultative mental status evaluation of Plaintiff was conducted by Dr. Osborn (Tr. 378-382). Dr. Osborn noted that Plaintiff was socially confident with his interactions, understood questions readily and had a constructive approach to the interview. (Tr. 379). Dr. Osborn noted that Plaintiff said he watched television, read occasionally, played ping-pong, went to church occasionally, talked on the phone, bathed, changed his clothes, and washed his hair. (Tr. 380). The mental status evaluation revealed that Plaintiff was oriented to person, place, time, situation, and was both alert, and responsive. *Id*. The examination further revealed a moderately depressed mood with a mild level of generalized anxiety. *Id*. However, Dr. Osburn noted that there were no indicators of panic, agoraphobia, flat affect, or hostility, and that Plaintiff's memory, concentration, abstract thinking, and judgment were all adequate. (Tr. 380-381). Dr. Osborn diagnosed Plaintiff with moderate dysthymia and concluded that Plaintiff would be able to perform routine, repetitive tasks, interact with co-workers, receive supervision, and maintain both concentration and attention. (Tr.

381-382).

On August 21, 2003, a state agency psychologist completed a Psychological Review Technique Form (PRTF) and a mental residual functional capacity (RFC) on Plaintiff.  The finding was that Plaintiff could understand and remember simple and detailed instructions and had the ability to carry out these tasks. (Tr. 400).  The evaluation further concluded that Plaintiff could concentrate for two hour periods, interact adequately with supervisors, co-workers, and the public, and adapt adequately in order to complete a normal work week. *Id*.  On September 3, 2003, a state agency physician completed a physical RFC finding that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (Tr. 406-413). The physician noted postural limitations in both climbing and balancing and environmental limitations to temperature and hazards. (Tr. 408-410).

During his hearing before the ALJ, Plaintiff testified that he lives with his wife and two children. (Tr. 419).  Plaintiff stated that he last worked as an insurance agent but quit because he had trouble with falling in people's homes. (Tr. 420-421).  Plaintiff testified that his impairments limited his sitting to 1½ to 2 hours before he had to either stand or lie down. (Tr. 429).  Plaintiff further testified that he could not stand for more than 20 minutes, he had to use a cane and a shower chair while bathing, and that he often had to elevate his feet. (Tr. 424, 436, 437).  Plaintiff stated that the pain in his legs would occasionally rate as a 10, with 10 being the worst. (Tr. 435).  Plaintiff also testified that he experienced fatigue, dizziness, diarrhea, thirst, and that he often fell down due to neuropathy in his feet. (Tr. 428, 430-434).

The VE testified that an obese person of Plaintiff's age and education, with the need to constantly raise his legs and use a cane, was prone to lose balance during times of exertion, could not be around unprotected heights, and suffered from a hearing impairment and drowsiness, would

not be able to perform past work or any other work. (Tr. 442-444). However, the VE did note that an individual with the above limitations, excluding the need to elevate his legs, could perform a range of unskilled sedentary and light activity (Tr. 445). The Plaintiff's attorney asked the VE how many of the 200 unskilled sedentary positions, within the scope of the unskilled light positions noticed under the Social Security regulations, an individual with the limitations listed above, excluding the need to elevate his legs, would be able to perform. (Tr. 445). In response, the VE testified that such an individual would be able to perform 90 percent of those positions. *Id.*

The ALJ found that the Plaintiff had not performed gainful activity since his alleged onset date. (Tr. 18, 22). The ALJ determined that Plaintiff's depression and hearing problem were not severe impairments (Tr. 18-19). The ALJ further found that Plaintiff did have severe impairments consisting of obesity, insulin dependent diabetes mellitus, and peripheral neuropathy. However, the ALJ found that these impairments did not meet or medically equal any impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (Tr. 18-19, 23). Furthermore, the ALJ found that Plaintiff's subjective complaints were not entirely credible. (Tr. 20-23). The ALJ determined that although Plaintiff was unable to return to his past relevant work, he had the RFC to perform sedentary work. Thus, the ALJ determined that based on Plaintiff's RFC, age, education, work experience, and in accordance Medical-Vocational Rule 201.28 of 20 C.F.R. Part 404, Subpt. P, App. 2, Plaintiff was not disabled. (Tr. 20-23).

## **STANDARD OF REVIEW**

On review, the ALJ's determination that a claimant is not disabled will be upheld if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and it was reached through the application of proper legal standards. 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The United States Supreme Court defined

substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," being "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is found to support the decision, then the decision is conclusive and must be affirmed, even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). On appeal, the court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence preponderates against the decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## ANALYSIS

Plaintiff first argues that the ALJ erred by failing to evaluate and consider Plaintiff's obesity pursuant to the sequential evaluation process in accordance with 20 CFR 404.1520(a)(3), (4)(i)-(v) and SSR 02-1p. *See* Plaintiff's Memorandum [7-1] p. 5. Specifically, Plaintiff argues that although the ALJ found Plaintiff's obesity to be a severe impairment, the ALJ dismissed such evidence in Step Five (5) of the sequential evaluation because Plaintiff did not attempt to lose weight. *Id.* Plaintiff argues that SSR 02-1p requires that obesity must be considered during the sequential process because obesity increases the chances of a claimant developing impairments in most body symptoms. *Id.* at 6. The Plaintiff further argues that SSR 02-1p indicates that obesity may cause or contribute to mental impairments such as depression, loss of mental clarity, slowed reactions, and is to be evaluated as any other impairment in the sequential process under 20 CFR 404.1520(a)(3), (4)(i)-(v). *Id.*

The Court agrees with Plaintiff that pursuant to SSR 02-1p, the ALJ is required to consider an claimant's obesity throughout the sequential evaluation process. In the case at bar, the ALJ considered Plaintiff's obesity, finding that his morbid obesity was a severe impairment. (Tr. 18, 22-

23).   The Defendant argues, and the Court agrees, that the ALJ's findings are consistent with the evidence of record.  The record does not reflect an indication that  Plaintiff's obesity caused greater functional limitations exceeding those found by the ALJ. Neither Dr. Haidar nor Dr. Osburn, who were aware of Plaintiff's obesity, indicated that he was more severely limited by his obesity than what the ALJ found. (Tr. 371, 374, 378-384, 403-405).  The state agency physician found that Plaintiff retained the capacity to perform the exertional requirements of light work. (Tr. 406-413).  Although, the state agency physician opined that Plaintiff had additional environmental limitations and was restricted in his ability to climb and balance, the physician did not note that these restrictions were due to Plaintiff's obesity (Tr. 408, 410).[1]  Furthermore, the limitations were not identified by Plaintiff's treating physician.

Defendant argues that, assuming *arguendo,* that the ALJ did not explicitly consider Plaintiff's obesity in accordance with SSR 02-1p, such a failure alone would not warrant remand in this case.[2]

---

[1]Defendant argues that even if the postural and environmental limitations opined upon by the state agency physician were due to plaintiff's obesity, there was no reversible error in failing to include these limitations in the RFC. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (stating, "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").  Citing SSR 96-9p, the Defendant further avers that environmental restrictions generally would not significantly effect the range or sedentary unskilled work as found by the ALJ, nor would the postural limitations of climbing or balancing.  Defendant points out that with respect to balancing, the VE testified that an individual with such a limitation at times of exertion could perform the requirements of unskilled sedentary work (Tr. 442-445).

[2] Defendant points to the holdings of several courts that have found that the failure to discuss obesity is not cause for remand where, as here, no physician assessed work related limitations as a result of the obesity. *See Rutherford v. Barnhart*, 399 F.3d 546, 552-553 (3rd Cir. 2005) (failing to consider obesity did not warrant remand where claimant did not show how obesity would affect outcome of the case and medical evidence did not identify limitations due to obesity); *Forte v. Barnhart*, 377 F.3d 892, 896-897 (8th Cir. 2004) (failing to discuss obesity was harmless error where no physician assessed work related limitations as a result thereof); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (failing to mention evidence of obesity did not require remand under SSR 00-3p and SSR 02-1p where ALJ adopted limitations

Although Plaintiff's physician and psychologist noted obesity, at no point did they find significant work limitations due to his obesity. Defendant argues, and the Court agrees, that Plaintiff fails to point to any evidence of record establishing functional restrictions beyond those found by the ALJ due to his obesity. Accordingly, the Court finds that remand is not appropriate regarding this issue.

Plaintiff next argues that the ALJ erred by failing to evaluate and consider symptoms resulting from the Plaintiff's medically determinable impairments, including that of obesity, diabetus mellitus, and severe diabetice peripheral neuropathy pursuant to 20 CFR 404.1523, 20 CFR 404.1529(a)-(d) and SSR 96-4p. *See* Plaintiff's Memorandum [7-1] p. 7. Specifically, Plaintiff asserts that the ALJ failed to consider the symptoms which resulted in Plaintiff's medically determinable impairments of obesity, diabetus mellitus, and severe diabetus peripheral neuropathy as set forth in Dr. Haider's August 25, 2003 report. *Id.* Plaintiff asserts that pursuant to SSR 96-4p, the August 25, 2003,opinion of Dr. Haider meets the definition of an object medically determinative impairment. *Id.* Plaintiff further argues that pursuant to 20 CFR 404.1529(c)(1)-(4), the ALJ was compelled to evaluate Plaintiff's testimony in addition to the objective medical evidence of Plaintiff's impairments relative to determining the intensity and persistence of related systems. *Id.*

Citing SSR 96-7p, Defendant avers that one strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case records. The Defendant notes that Plaintiff testified that his impairments limited his sitting to 1½ to 2 hours before he had to either stand or lie down. (Tr. 429). Plaintiff further testified that he could not stand for more than 20 minutes, he had to use a cane and a shower chair while bathing, and that he often had to elevate his feet. (Tr. 424, 436, 437). Plaintiff stated that the pain in his legs would occasionally rate as a 10, with 10 being the worst. (Tr. 435). Plaintiff also testified that he experienced fatigue,

---

 suggested by physicians who were aware of claimant's obesity).

dizziness, diarrhea, thirst, and that he often fell down due to neuropathy in his feet. (Tr. 428, 430-434).

Defendant argues that Plaintiff's testimony is inconsistent with both the reports in the medical record as well as the lack of treatment Plaintiff sought. *See* Defendant's Memorandum [9-1]. Plaintiff argues that Dr. Haidar's August 2003, examination supports Plaintiff's claims regarding the severity of symptoms. However, as the Defendant notes, nothing in Dr. Haidar's notes indicate that Plaintiff was disabled. The only abnormalities Dr. Haidar noted were in Plaintiff's lower extremities. (Tr. 404). Regarding Plaintiff's lower extremities Dr. Haidar noted decreased sensation, difficulty with heel and toe walking, and difficulty standing upright from a squatting position. However, Dr. Haidar found that Plaintiff possessed normal range of motion at the hips, knees, and ankles with normal dorsi and plantar flexion. (Tr. 404). Contrary to Plaintiff's testimony, Dr. Haidar noted that Plaintiff had normal gait and did not require the assistive device to ambulate. (Tr. 404, 437).

Defendant submits, and the Court agrees, that Dr. Haidar's examination does not support the severity of symptoms as alleged by the Plaintiff. Furthermore, Dr. Osborn opined that Plaintiff should be able to engage in activities, such as house chores. (Tr. 379). Regarding Plaintiff's allegations of extreme leg pain (Tr. 435), the Defendant cites *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) in which the Fifth Circuit noted that disabling pain is "constant, unremitting, and wholly unresponsive to therapeutic treatment." The record does not support a finding that such severe and disabling pain exists as Plaintiff alleges. Accordingly, the Court finds that substantial evidence exists which supports the ALJ's credibility determination of the Plaintiff.

The Plaintiff next argues that pursuant to SSR 96-8p, the ALJ erred in failing to conduct a RFC assessment on a function by function analysis of the Plaintiff's ability to regularly achieve work related activities. *See* Plaintiff's Memorandum [7-1] p. 9. The Plaintiff further argues that the ALJ

erred in failing to find that the sedentary occupational base was seriously eroded by the Plaintiff's restrictions. Specifically, the Plaintiff asserts that the ALJ failed to make a clear finding as to the effect of the Plaintiff's difficulty to balance or climb.

The record reflects that in evaluating the Plaintiff's RFC, the ALJ considered the medical evidence, Plaintiff's subjective complaints, and the record as a whole. The ALJ incorporated Plaintiff's functional limitations into the RFC and determined that Plaintiff could perform sedentary work. Records from Plaintiff's treating physician, Dr. Haidar, indicate no abnormalities with respect to Plaintiff's head, ears, eyes, neck, throat, heart, lungs, abdomen, and upper extremities. (Tr. 404). Dr. Haidar found that Plaintiff had normal range of motion at the hips, knees, and ankles with normal dorsi and plantar flexion. *Id.* However, Dr. Haidar found that Plaintiff had 1+ edema in both lower extremities and marked onychomotic changes in the toenails. (Tr. 404). As previously noted, Dr. Haidar reported the absence of sensation in both of Plaintiff's feet, Plaintiff's difficulty walking on tiptoes and heels, as well as Plaintiff's inability to stand up from the squatting position. Despite these limitations, Dr. Haidar noted that Plaintiff's gait was normal and the ambulatory device was unnecessary. (Tr. 404). Following Dr. Haidar's August 2003, evaluation of the Plaintiff, there is no evidence of record that Plaintiff sought any treatment for his physical impairments.

The non-examining state agency physician limited Plaintiff to occasional to no balancing. (Tr. 408). Defendant argues that any failure by the ALJ to include such a restriction in the RFC does not warrant remand. *See* Defendant's Memorandum [9-1] p. 15. As Defendant points out, SSR 96-9p indicates that, except when balancing on a level terrain is effected, limitations on balancing would not cause a significant erosion of the unskilled sedentary occupation base. In the case at bar, a review of the record does not support a limitation on balancing on level terrain. As previously noted, Dr. Haidar, stated that Plaintiff's gait was normal and that he did not require an assistance of an

ambulatory device. (Tr. 404). Furthermore, the VE testified that if Plaintiff was limited in his ability to balance during times of exertion, Plaintiff could still perform a range of unskilled sedentary work and there would not be a significant erosion in this work base as defined by the 200 positions referenced in 20 C.F.R. § 404, Subpart P, Appendix 2, § 201.00 (Tr. 442-445). The Defendant submits, and the Court agrees, that in light of this testimony, Plaintiff is unable to show any prejudice which resulted from the ALJ's alleged failure properly consider his ability to balance pursuant to SSR 96-9p.

Evidence that Plaintiff's suffers from some mental impairments is contained in the record. Defendant argues that nothing in the record indicates that these impairments would significantly limit Plaintiff's ability to perform unskilled work. The Defendant points out that although the ALJ never explicitly limited Plaintiff to unskilled work, the ALJ did rely on the Medical-Vocational Guidelines in rendering her decision. The regulations at 20 C.F.R. § 404, Subpart P, Appendix 2, § 200.00(b) provide that "in promulgating the [Grids], administrative notice has been taken of the number of unskilled jobs that exist throughout the national economy at the various functional levels." Thus, Defendant submits, and the Court concurs, that any failure by the ALJ to specifically limit Plaintiff to unskilled work cannot be considered reversible error. Dr. Osborn opined that Plaintiff would be able to perform routine, repetitive tasks, interact with co-workers, receive supervision, and maintain concentration and attention. (Tr. 381-382). Furthermore, the state agency psychologist found that Plaintiff was able to perform tasks which involved detailed instructions. (Tr. 400).

The Court finds that substantial evidence exists which supports the ALJ's finding that Plaintiff's impairments were not disabling. The Defendant argues that even if the Court were to determine that the ALJ failed to explicitly detail each function in his RFC assessment, Plaintiff would still not be entitled to remand in this case because he fails to make a showing of any prejudice.

Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff could perform sedentary work and that Plaintiff not disabled according to the Medical-Vocational Guidelines.

## **CONCLUSION**

The court has fully reviewed the entire record on this matter and finds that the Commissioner did not err as a matter of law in reaching the "final decision" in this matter and that the decision is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner is supported by substantial evidence and should be affirmed.  Thus, the Court finds that Plaintiff's Motion [6-1] to Reverse/Remand should be denied and the decision of the Commissioner should be affirmed.

In accordance with the Rules of this Court, any party within ten days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy to the Judge, the U.S. Magistrate Judge and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the __14th__ day of February, 2008.


_____
s/ JOHN M. ROPER
CHIEF UNITED STATES MAGISTRATE JUDGE